UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GENCOR PACIFIC, INC.,           )
                                )
            Plaintiff,          )
                                )
     vs.                        )        07 C 167
                                )
NATURE'S THYME, LLC, and        )
GORDON GIBBS, and ADAM GIBBS,   )
                                )
            Defendants.         )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motions of Defendants Nature's Thyme LLC, Gordon Gibbs, and Adam Gibbs to dismiss the complaint of Plaintiff Gencor Pacific, Inc. ("Gencor") pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). For the reasons set forth below, the motions to dismiss are granted.[1]

## BACKGROUND

According to the complaint, Gencor is a Texas corporation with its principal place of business in Austin, Texas. Gencor manufactures an appetite suppressant and

---

[1] The briefing schedule set in this matter contemplated a reply from Nature's Thyme. One was filed, but past the set deadline, prompting Gencor to move that it be stricken. The motion was granted. As a result, the assertions contained within the reply played no role in the decision contained herein.

weight-loss promoter containing a *Caralluma Fimbriata* extract.  To substantiate its claims of the product's efficacy, Gencor conducted clinical and laboratory trials, the findings of which were detailed in various studies and reports.  It owns the copyrights, and all other rights, in these documents and uses them to market its *Caralluma* extract.

Nature's Thyme is a New Jersey corporation with its principal place of business in Cedar Knolls, New Jersey.  Defendant Gordon Gibbs is its Chief Executive Officer; Defendant Adam Gibbs, its Vice President in Charge of Operations.  Nature's Thyme sells a powdered product that contains *Caralluma Fimbriata*.  Gencor alleges that Nature's Thyme used portions of its studies to support Nature's Thyme's claims about the composition and efficacy of its *Caralluma* product without Gencor's consent.  The allegedly infringing and misleading documents were contained in marketing materials on a computer disk Nature's Thyme supplied to consumers.

On January 10, 2007, Gencor filed a five-count complaint in this court.  Count I alleges that Nature's Thyme's use of the study contents in its marketing materials constituted false advertising under the Lanham Act (15 U.S.C. § 1125(a)).  Count II alleges common law unfair competition against all Defendants.  Count III contends that Nature's Thyme was unjustly enriched by their use of Gencor's materials.  Counts IV and V allege federal and common law copyright infringement, respectively.

Nature's Thyme and the Gibbses now move to dismiss Gencor's complaint for lack of personal jurisdiction and improper venue. Because of the nature of Gencor's challenge, we may look beyond the allegations of the complaint and consider properly supported factual assertions made by both parties. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Any factual disputes must be resolved in favor of Gencor, but unrefuted assertions from Nature's Thyme will be considered to be true. *Id.*

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

*A. Legal Standard*

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction over the defendant is proper. *RAR*, 107 F.3d at 1276. In a federal question case, a personal jurisdiction inquiry has two components: first, an examination of whether a defendant are amenable to service of process; and second, whether an exercise of extraterritorial jurisdiction would comport with the defendant's due process rights. *Swaim v. Moltan Co.*, 73 F.3d 711, 719-20 (7th Cir. 1996).

The first component, amenability to service, is determined in federal cases according to Fed. R. Civ. P. 4(k)(1). *Inter alia*, the rule provides that defendants are amenable to service in a federal case if they would be subject to the jurisdiction of a

state court in the state in which the district court sits or if the suit is brought under a statute that explicitly provides for nationwide service. Fed. R. Civ. P. 4(k)(1)(A), (D).

With regard to the second component, the exercise of jurisdiction over a non-resident defendant comports with federal due process if the defendant has "purposefully established minimum contacts within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Once the level of contact with a forum state reaches a certain point, a party should understand that the trade-off for the privilege of conducting its activities is that it can be haled into that state's courts to answer for its actions. *Id.* at 474, 475. The level of contact necessary will depend on several factors. One consideration is whether the plaintiff asserts that the court has specific personal jurisdiction, meaning that the cause of action arises from the activities within the forum state, or general personal jurisdiction, meaning that the cause of action is unrelated to the defendant's activities in the forum state. In addition, factors other than the burden on the defending party can come into play, such as the interest of the forum state in adjudicating the dispute in its courts, allowing the plaintiff to obtain convenient and effective relief, and the interest of the interstate judicial system in efficient resolution of controversies that can be addressed in multiple fora. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). No matter how these factors combine, however, due process mandates that maintenance of the suit in

the forum is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

*B. Discussion*

Our first area of attention in assessing the 12(b)(2) motion must focus on whether Nature's Thyme and the Gibbses are amenable to service of process. Gencor has invoked two federal statutes, the Copyright Act and the Lanham Act; neither provides for nationwide service of process. Therefore, Nature's Thyme and the Gibbses are amenable to service only if they would be subject to the jurisdiction of an Illinois state court via the state's long-arm statute. 735 ILCS 5/2-209(c).

Two provisions of the long-arm statute are potentially at issue in this case. The first, subsection (a)(1), provides that a defendant submits to the jurisdiction of the Illinois courts if that party transacts business within Illinois. The second, subsection (c), allows an Illinois court to exercise jurisdiction over a nonresident defendant for any basis allowed by the Illinois and federal Constitutions not specifically addressed elsewhere in the long-arm statute. To date, no case has found any divergence between Illinois and federal due process with regard to personal jurisdiction and have evaluated jurisdictional questions using federal constitutional jurisprudence. *See, e.g.*, *Bolger v. Nautica Int'l Inc.*, 861 N.E.2d 666, 669 n.1 (Ill. App. Ct. 2007); *Hyatt Int'l Corp. v.*

*Coco*, 302 F.3d 707, 715 (7th Cir. 2002). None of the parties has asserted that this mechanism is insufficient in this case, so we shall employ it.

Gencor contends that Nature's Thyme should be subject to both specific and general personal jurisdiction. Specific personal jurisdiction exists when an asserted cause of action arises out of or is related to the defendant's contact with the forum state. *Id.* at 713. General jurisdiction is found when a defendant has such an extensive relationship with the forum state that it is in essence indistinguishable from a resident party. *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540-41 (7th Cir. 1998). When general jurisdiction is present, others may pursue any cause of action against a party in the state's courts, even if it is unconnected to the party's contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

The sum total of Nature's Thyme's contacts with Illinois are as follows: It has one customer in this state to whom a single sale of $300 worth of goods was made some time between late February 2007 and March 9, 2007. It has a practice of sending out general solicitations to prospective customers, one or two of which may have been sent to Illinois residents. It operates a website available to users in Illinois that advertises its *Caralluma* product. However, the company does not own any property in Illinois and has never had a relationship with another company in Illinois. Moreover, no

solicitations containing the material referenced in Gencor's complaint were sent to Illinois.

1. Specific Jurisdiction

Gencor argues that the above contacts are sufficient to create specific jurisdiction[2] over Nature's Thyme. To properly assess this claim, we must focus on the nature of the claims Gencor makes against Nature's Thyme and the Gibbses.[3] Gencor's causes of action are targeted not at the sale of Nature's Thyme's *Caralluma* product but at the use of the information from the studies. Gencor alleges only that the infringing material was part of Nature's Thyme's marketing material on the physical disks that were shipped to customers. Gencor provides no evidence that the presentation disk that contained the offending material reached any consumers in Illinois. There is no assertion that these documents were available on Nature's Thyme's website.

In the context of specific jurisdiction, business transactions completed in a context unrelated to the cause of action cannot be used to justify an exercise of personal jurisdiction. *RAR*, 107 F.3d at 1278. In this case, Nature's Thyme's single Illinois

---

[2]The corresponding portion of the Illinois long-arm statute for this case would be 735 ILCS 5/2-209(a)(1), which provides for an exercise of jurisdiction when a cause of action arises from the transacting of business within Illinois.

[3]Because Gencor has not offered any contacts that either of the Gibbses have outside of the company's contacts, we do not examine personal jurisdiction separately for those parties.

customer and the sporadic solicitations (that did not contain the allegedly infringing material) sent to Illinois are unrelated to the claims Gencor raises before this court. Furthermore, the additional factors identified by the Supreme Court that can potentially reduce the amount of contact that will be required before an exercise of jurisdiction will comport with due process do not tilt the balance in Gencor's favor. *See World-Wide Volkswagen*, 444 U.S. at 292. Gencor is not an Illinois company, and there is no indication that Illinois customers were harmed by any action on the part of Nature's Thyme. Gencor has offered no reason why Illinois would be a more convenient forum for this litigation for it than Texas, its home forum, or New Jersey, Nature's Thyme's home state. Neither has Gencor given any rationale for us to conclude that resolution of this matter in an Illinois court would be more efficient than in a Texas or New Jersey court.

For all these reasons, we conclude that the contacts Nature's Thyme has with Illinois are not sufficiently connected to the causes of action Gencor has set out in its complaint to permit an exercise of specific personal jurisdiction over Nature's Thyme.

2. General Jurisdiction

As an alternative position, Gencor also contends that the contacts Nature's Thyme has with Illinois comprise a continuous and systematic pattern of behavior

sufficient to expose it to general jurisdiction in Illinois courts, i.e., jurisdiction even over actions not related to its contacts.[4]

Two seminal Supreme Court cases analyzed the issue of what sort of contacts with the forum state would be sufficient to establish general jurisdiction over an out-of-state defendant. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952); *Helicopteros*, 466 U.S. at 408. In *Perkins*, the president of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company during the Japanese occupation of the Philippines in World War II. *Perkins*, 342 U.S. at 448-49. These activities included keeping company files, holding meetings, carrying on correspondence, distributing checks drawn on Ohio bank accounts, and doing business with an Ohio bank. *Id.* The Court held that this level of activity established continuous and systematic business in Ohio and general jurisdiction was appropriate. *Id. Helicopteros* involved a wrongful death suit in Texas against a Colombian company for a fatal accident that occurred in South America. The company had some connection to Texas in that it sent its chief executive officer to Houston to conduct contract negotiations, sent its personnel to Fort Worth for training, accepted checks drawn from a Houston bank account, and purchased over $4 million worth of

---

[4]The applicable section of the Illinois long-arm statute for exercising general jurisdiction over a party like Nature's Thyme is 735 ILCS 5/2-209(b)(4).

helicopters and accessories from a company based in Fort Worth. *Helicopteros*, 466 U.S. at 409-11. However, because the contacts were too sporadic to be analogous to the conduct seen in *Perkins*, the Court concluded that they were insufficient to justify Texas' assertion of general jurisdiction over the foreign defendant. *Id.* at 418.

Gencor contends that three things establish a continuous and systematic pattern of behavior by Nature's Thyme akin to that discussed in *Perkins*. The first is Nature's Thyme's single sale to an Illinois customer in Illinois. The second is the handful of general solicitation notices that may have been sent to Illinois. The third is the fact that Nature's Thyme maintains a website that allows customers to request information about its products and at one time permitted online ordering. Gencor also speculates that Nature's Thyme must have had more contact than what Nature's Thyme has described, as it is "common knowledge that not all sales leads result in sales" and Chicago's prominence as a business center must mean that Nature's Thyme has done significant business here.

The evidence that Gencor offers in support of its argument for general jurisdiction, with the possible exception of Nature's Thyme's website, could not even rise to the level deemed insufficient in *Helicopteros*, let alone approach the kind of conduct set out in *Perkins*. Nature's Thyme does not maintain an office in Illinois. There is no evidence that it conducts meetings in Illinois, has an Illinois bank account,

or sends employees to Illinois. Thus, if Gencor's claims of personal jurisdiction are to succeed, they will have to find their foundation in Nature's Thyme's online activities.

If the activities conducted on a website or the Internet are extensive and frequent enough, they can form the basis for an exercise of general jurisdiction. *See*, *e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002). The exact range of virtual business that can be conducted on Nature's Thyme's website is not clear from the parties' submissions. It is apparent that, at some point since the site's launch in 2001, customers were able to order products using online ordering mechanisms. It is also evident that customers can request information from Nature's Thyme via the website. The Illinois state courts have adopted a "sliding scale" approach to a defendant's internet activity and personal jurisdiction. *See Rosier v. Cascade Mountain, Inc.*, 855 N.E.2d 243 (Ill. App. Ct. 2006); *Bombliss v. Cornelsen*, 824 N.E.2d 1175 (Ill. App. Ct. 2005). The scale classifies Internet activity into one of three categories. On one end of the spectrum is the "active" website, where the defendant clearly transacts a significant amount business over the internet. *Bombliss*, 824 N.E.2d at 1180. On the other end is the "passive" site, which allows no interaction with a customer. *Id.* The "middle ground" is occupied by interactive websites where the user can exchange information with the defendant operator. *Id.* In these cases, the

exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website. *Id.*

In addition, the Illinois appellate courts have emphasized the necessity for a website to actually be used by Illinois residents before it can lead to an exercise of general jurisdiction. *Rosier*, 855 N.E.2d at 250. In *Rosier*, the out-of-state ski and snowboard facility maintained a website accessible to Illinois residents that allowed users to subscribe to e-mail bulletins and purchase gift certificates, season passes, insurance, and equipment rental. *Id.* at 249. The court noted that while the website provided for online purchasing, the plaintiff failed to offer evidence that the website was being used for actual purchases. *Id.* The plaintiffs did not cite any commercial transactions with Illinois residents through the website. *Id.* Consequently, the website presence in Illinois was an insufficient basis for exerting general jurisdiction over the nonresident defendant. *Id.* at 250.

In this case, Gencor has shown that Nature's Thyme used its website to post information about its products in a centralized location where Internet users, in Illinois or elsewhere, could access it without any further action from Nature's Thyme. It allowed users to contact Nature's Thyme for additional information and product quotes. At some point, it was possible for users to purchase products using online ordering and payment. However, there is no evidence that any Illinois users ever requested quotes

or purchased goods via the website. Without such evidence, Illinois law does not permit an exercise of general jurisdiction. *Id.* Moreover, as the Seventh Circuit has pointed out, general jurisdiction is only appropriate over a nonresident defendant when that party is so like a resident business that the degree of benefit it derives from the services and protection of the forum state is nearly identical to that enjoyed by resident parties. *IDS Life*, 136 F.3d at 540-41. To reach this threshold of similarity, Nature's Thyme's Illinois-related activities would need to exhibit the permanent, continuous, systematic contact that would be seen with a resident business. *See Helicopteros*, 466 U.S. at 416; *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994). Though the online activities Gencor points to are certainly some of the activities that a business that was a resident of Illinois would engage in, they cannot be said to be so extensive and central to the business's operation that Nature's Thyme becomes indistinguishable from a resident business. As a result, we conclude that an exercise of general personal jurisdiction over Nature's Thyme would not be consistent with due process. Because neither specific nor general personal jurisdiction is available in this case, Nature's Thyme and the Gibbses are not amenable to service of process under the Illinois long-arm statute, and an exercise of personal jurisdiction would not be consistent with the defendants' due process rights. Accordingly, the 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted.

**II. Motion to Dismiss for Improper Venue**

In general, venue in federal question cases is proper in a district where a defendant resides, if all defendants are residents of the same state; in a district where a substantial part of the acts or omissions from which the claim emanates occurred; or in any district where any defendant may be found if venue cannot be established via either of the other two avenues. 28 U.S.C. § 1391(b). Further, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c).

With the exception of Count IV, the causes of action asserted in the complaint fall within the ambit of § 1391(b). Nature's Thyme is a New Jersey corporation with its principal place of business in New Jersey. Gordon and Adam Gibbs also reside in New Jersey. This, combined with our conclusion that we do not have personal jurisdiction over any of the defendants, prevents a finding of proper venue under § 1391(b)(1). The events that gave rise to this claim did not occur in Illinois, so venue is also not proper under § 1391(b)(2). The final statutory subsection, § 1391(b)(3), is inapplicable because there are other districts, such as the District of New Jersey where the defendants reside, where venue would be proper.

For the copyright claim asserted in Count IV, venue is governed by 28 U.S.C. §1400(a), which provides that it is proper in the district where the defendant resides or

may be found. A defendant "may be found" only in districts where a court could properly exercise personal jurisdiction over that party. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co. Inc.*, 8 F.3d 441, 445 (7th Cir. 1993). Nature's Thyme, Gordon Gibbs, and Adam Gibbs are all residents of New Jersey, not Illinois, so venue is not proper under the first prong of § 1400(a). Because we have concluded that we do not have personal jurisdiction, the defendants may not be found in the Northern District of Illinois, so venue is not proper under the second statutory option either. 8 F.3d at 445.

Therefore, venue does not lie in this district, and the 12(b)(3) motion must be granted as well.

## CONCLUSION

For the foregoing reasons, the motions of Nature's Thyme, Gordon Gibbs, and Adam Gibbs to dismiss for lack of personal jurisdiction and improper venue are granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   April 24, 2007